UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

*****************************************************************************
| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 98-50078 |
| Plaintiff, | * | |
| -vs- | * | MEMORANDUM OPINION AND ORDER |
| JOSE LAZARO CONTRERAS, | * | |
| Defendant. | * | |

*****************************************************************************

Jose Lazaro Contreras ("Contreras") filed a pro se motion for compassionate release pursuant to the First Step Act. (Doc. 264.) The Assistant Federal Public Defender (FPD) appointed to represent individuals who file pro se pleadings seeking relief under the First Step Act submitted a supplement in support of Contreras' motion for compassionate release. (Doc. 268.) The government opposes the motion. (Doc. 272.) A reply was submitted by the FPD. (Doc. 275.) The reply included a letter from Contreras. (Doc. 275-1.) For the following reasons the motion is denied.

## BACKGROUND

On September 26, 2000, Contreras was found guilty of conspiracy to possess with intent to distribute and to distribute at least one kilogram (2.2 pounds or 1000 grams) of a mixture containing methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(l) and 846.

The United States Probation Office prepared a Presentence Investigation Report (PSR), finding Contreras responsible for over 20 kilograms of methamphetamine. The PSR computed a base offense level of 38, plus a two level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon, and a four-level enhancement pursuant to U.S.S.G. § 3B1.l(a) for being an organizer, leader, manager or supervisor in a conspiracy that involved five or more participants, or was otherwise extensive, resulting in an adjusted offense level of 44. With an offense level of 44

and a criminal history category III, Contreras had a mandatory sentence of life in prison. At the time of Contreras' sentencing on March 5, 2001, the Federal Sentencing Guidelines were mandatory.

At sentencing, United States District Judge Richard Battey heard the parties' arguments regarding the Guidelines calculation in the PSR, and whether the Court should depart due to Contreras' agreement to voluntarily deport after serving his sentence. (Doc. 204, Sentencing Transcript.) The sentencing court imposed a life sentence. (*Id.*, p. 37; Doc. 195, Judgment.) Contreras' conviction and sentence were upheld on appeal. (Doc. 227.)

Subsequently, the Sentencing Commission adopted Amendment 782 which became effective November 1, 2014, and was made retroactive effective November 1, 2015. *See United States v. Lawin*, 779 F.3d 780, 781 n. 2 (8th Cir. 2015). Essentially, Amendment 782 "applies retroactively to reduce most drug quantity base offense levels by two levels." *Id.* at 781 n.2 (citing *United States v. Thomas*, 775 F.3d 982, 982 (8th Cir. 2014).

On August 24, 2016, Contreras filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on the retroactively-amended drug quantity base offense levels. (Doc. 241.) In his § 3582(c)(2) motion, Contreras argued that Amendment 782 should be applied to reduce his offense level by two levels, from 44 to 42, resulting in a guideline range of 360 months to life rather than life. This Court determined that Contreras was eligible for a sentence reduction under § 3582(c)(2) and granted his motion. (Doc. 262.) The Court explained:

> The Court can and will consider conduct of the Defendant during his current incarceration. The Defendant has had several instances of violent conduct toward other inmates. The Defendant says that especially in a high security prison there are situations where you must protect yourself and he did. The reports do not indicate self defense. On the other hand, the Defendant has taken advantage of many courses offered at the prison to better himself. Defendant claims no violent offenses before this incarceration. The Defendant did have a concealed weapons conviction in 1991 at age 20. Despite those accomplishments, there is a public safety concern over the release of the Defendant back into the general population. The Court also observes that the Defendant will probably be deported upon release.
>
> In considering the 18 U.S.C. § 3553 factors, the Court does also recognize that this Defendant's life sentence was far greater than the 48 months his co-conspirator received. This Defendant warranted a longer sentence than his co-conspirator. Although the differences in sentences was mandated at that time in this Defendant's instance, it was an excessive difference under the facts of this case and now that excessive difference can be addressed.

(Doc. 262, pp. 1-2.)  Rejecting Contreras' request for a sentence of 360 months, the Court reduced his sentence to 372 months' imprisonment.  (Doc. 263.)

Contreras now seeks a sentence reduction under the First Step Act.  Currently, Contreras is incarcerated at the correctional institution in Inez, Kentucky (USP Big Sandy), which reports 27 confirmed cases of COVID-19 among inmates (3 active and 24 "recovered"), and 58 cases among staff (19 active and 39 "recovered").  *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last reviewed November 23, 2020.)  Contreras has been in custody since August 6, 1998 for this drug offense.  (Doc. 266, p. 641.)  He has served over 22 years of his sentence, which is 71.5 percent of his full term and 82.9 percent of his statutory term (which takes into account good time credit).  (*Id*., p. 644.)  His projected release date is May 6, 2025.  While most inmates are eligible to serve up to the last year of their sentence in a halfway house or on home confinement, Contreras will not be eligible due to the ICE detainer.  (*Id*., p. 642.)  Contreras is 50 years old.

The supplemental briefs filed by the FPD explain that Contreras suffers from medical problems, including hyperlipidemia (Doc. 267, p. 598), hypertension since 2007 (Doc. 267, p 578), and more recently chest pain due to a granuloma in his lung.  (Doc. 267, p. 598.)  Contreras argues that being incarcerated makes him particularly vulnerable to COVID-19.  In support of this argument, he cites and attaches declarations from medical professionals discussing the risks of being incarcerated during the pandemic.[1]  To avoid this increased risk of contracting COVID-19 and developing serious complications, Contreras asks the Court to reduce his sentence to time served and order his immediate release.  He plans to care for his 91-year-old father at their home in Mexico if he is released while his father is still alive, and to continue learning American Sign Language.  (Doc. 275-1.)  His goal is to be an interpreter. (*Id*.)

---

[1] *See* Declaration of Dr. Chris Beyrer, Director of the Center for Public Health and Human Rights and Johns Hopkins (Doc. 268-1, "Beyrer Decl."); Declaration of Dr. Jonathan Golob, Assistant Professor at University of Michigan School of Medicine (Doc. 268-2, "Golob Decl."); Declaration. of Dr. Jaimie Meyer, Assistant Professor at Yale School of Medicine (Doc. 268-3, "Meyer Decl.").

## DISCUSSION

Title 18, § 3582(c)(1)(A)(i), known as the "compassionate release provision" of the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to passage of the First Step Act, compassionate release requests came to the Court "upon motion of the Director of the Bureau of Prisons." *United States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020). Now, a defendant may bring his or her own motion with the Court if administrative remedies have been exhausted. *Id.* at 744.

### I. Administrative Exhaustion

A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That requirement is satisfied here. On February 21, 2020, Contreras submitted a request for compassionate release to the warden at USP Big Sandy. (Doc. 267, pp. 646-54.) It was rejected by the warden on March 3, 2020. (Doc 267, p. 645.) As more than thirty days have elapsed from the date that Contreras submitted his requests to the warden, the Court has jurisdiction to consider the motion. *See United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) (Judge Karen E. Schreier) (motion for compassionate release is ripe for review where defendant submitted his request to the warden and the warden denied the request); *United States v. Harris*, 812 Fed. Appx. 106, 107, 2020 WL 4048690, at *1 (3rd Cir. July 20, 2020) (reversing district court's dismissal for failure to exhaust after government conceded that defendant was not required to

---

[2] 18 U.S.C. § 3582(c)(1)(A)(ii) does not apply because Contreras is 50 years old. He would need to be at least 70 years old to qualify for compassionate release consideration under Section (ii).

completely exhaust the administrative remedy process after warden denied his compassionate release request).

## II. Extraordinary and Compelling Reasons

To be eligible for compassionate release, a prisoner must show that "extraordinary and compelling reasons" warrant such a reduction in sentence and that the reduction is "consistent with applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Congress did not define what constitutes "extraordinary and compelling reasons." Congress elsewhere required the Commission to issue a policy statement "regarding . . . the appropriate use" of Section 3582(c), to include "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(a)(2)(C), (t). Since the passage of the First Step Act, the Sentencing Commission has not yet updated its policy statements related to compassionate release, and the Sentencing Commission has not clarified what "extraordinary and compelling might mean," under the First Step Act.[3] *Rodd*, 966 F.3d at 746. Thus, the Commission's Guidelines, formulated before the First Step Act was passed and well before the COVID-19 pandemic, still address motions for compassionate release being considered by the BOP Director. Those Sentencing Guidelines provide that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," the district court may reduce a defendant's term of imprisonment "if, after considering the factors set forth in 18 U.S.C. 3553(a)," the district court determines that –

(1)
  (A) extraordinary and compelling reasons warrant the reduction; or

  (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

---

[3] In *Rodd*, the Eighth Circuit observed that since the Sentencing Commission lacks a quorum to amend the Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to compassionate release motions brought by defendants in the near future. *Rodd*, 966 F.3d at 746 n.7 (citing *United States v. Beck*, 425 F.Supp.3d 573, 579 n.7 (M.D.N.C. 2019)).

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

As noted by the Eighth Circuit in *Rodd*, 966 F.3d at 746–47, the commentary to § 1B1.13 identifies four categories that constitute "extraordinary and compelling reasons warrant[ing] the [sentence] reduction," as that term appears in U.S.S.G. § 1B1.13(1)(A):

> (A) <u>Medical Condition of the Defendant</u>.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis. of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from Which he or she is not expected to recover.
>
> (B) <u>Age of the Defendant</u>.  The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) <u>Family Circumstances</u>.
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) <u>Other Reasons</u>.  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1(A)-(D).

The Eighth Circuit has declined to address whether district courts are bound by the Sentencing Commission's examples in this policy statement when considering a prisoner's compassionate release motion under the First Step Act. In *Rodd*, the Eighth Circuit noted that "[w]hile some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." *Rodd*, 966 F.3d at 745. The Court said it wasn't necessary to decide whether or not U.S.S.G. § 1B1.13 applies because the district court had assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons making him eligible for compassionate release under U.S.S.G. § 1B1.13, and still denied his motion after considering the § 3553(a) sentencing factors. *Id.* at 747–48.

In *United States v. Brown*, 411 F.Supp.3d 446 (S.D. Iowa 2019), the district court judge, Judge Robert Pratt, explained how some district courts have concluded they should rely only on the Sentencing Commission's pre-First Step Act guidelines regarding compassionate release, while other district courts also look to the BOP Program Statement written for the old law, and will only grant a motion for compassionate release under the same circumstances as the BOP would have prior to the First Step Act. *Id.* at 450. Judge Pratt described why it is his opinion that Congress intended to increase the use of compassionate release, and by amending § 3582 to allow defendants to motion district courts directly for compassionate release even after the BOP denies their petition, Congress intended to give district judges more discretion "to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.* at 451.

In this district, Judge Lange also has held that district courts are not limited by circumstances described in U.S.S.G. § 1B1.13, even if it applies to motions for compassionate release brought under the First Step Act. *See United States v. Dillabaugh*, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020) (holding that the "discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described").

The Second Circuit is the only circuit that has addressed the issue. That court recently ruled that compassionate release motions brought by prisoners pursuant to the First Step Act are not limited by the guidance in U.S.S.G. § 1B1.13. *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020). After stating all of the reasons for its conclusion, including the history and text of the First Step Act and Guideline § 1B1.13, the Second Circuit stated:

> For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

*Brooker*, 976 F.3d at 237.

This Court agrees with the reasoning of Judge Pratt, Judge Lange and the Second Circuit, and holds that a district court may use its discretion when it is considering the "extraordinary and compelling reasons" for a compassionate release. With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance. *See Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release).

Contreras argues that his health conditions and incarceration during the COVID-19 pandemic are "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13, Application Note 1(D). Compassionate release may be appropriate under subsection (D) where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, application note 1(D). This final provision is often called the "catch-all" provision. In its present version, subdivision (D) leaves identification of "other" extraordinary and compelling reasons to the BOP Director. *See id*. But now that the First Step Act allows inmates to move the Court for compassionate release without the BOP's support, it is unclear what other reasons can be the basis for compassionate release. Judge Schreier recently noted that "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020.) In *Morehouse*, Judge Schreier

8

considered the defendant's argument that his circumstances warranted relief under this "catch-all" provision in application note 1(D) because "his medical conditions put him at high-risk if he contracts COVID-19." *Id.* Finding that the defendant's medical conditions were being controlled and that the BOP's response to the pandemic at the Yankton FPC was adequate,[4] Judge Schreier held that the defendant's circumstances did not warrant a sentence reduction under U.S.S.G. § 1B1.13, application note 1(D). *Id.* at *3-4

Judge Lange has also considered whether health issues, combined with the COVID-19 pandemic generally, constitute extraordinary and compelling reasons for compassionate release under the "catch-all" phrase in U.S.S.G. § 1B1.13, application note 1(D). He observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

*United States v. Frost*, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Adopting this reasoning, this Court concludes that it has discretion to consider whether Contreras' health conditions and being imprisoned during the COVID-19 pandemic present an extraordinary and compelling basis for a sentence reduction. *See also Brooker*, 976 F.3d at 238 (noting that district courts around the country have used the coronavirus pandemic "as a justification for granting some sentence reduction motions").

According to the CDC, people with the following health conditions are at "increased risk for severe illness from COVID-19": cancer, chronic kidney disease, COPD, heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), immunocompromised state from organ

---

[4] When Judge Schreier issued her opinion, there had been no positive COVID-19 cases at the Yankton FPC. *Morehouse*, 2020 WL 2836188, at *2.

transplant, obesity (a BMI of 30 or higher), severe obesity (BMI over 40), pregnancy, sickle cell disease, smoking, and Type 2 diabetes. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed November 17, 2020). The CDC also provided a list of medical conditions that "might" put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state (from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids or other immune weakening medicines), neurologic conditions, such as dementia, liver disease, overweight (BMI over 25 but less than 30), Thalassemia (a type of blood disorder), and Type 1 diabetes. *Id.* The CDC has also stated that the risk for severe illness increases with age. *Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated September 11, 2020 and last reviewed November 17, 2020). "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older." *Id.* "The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

Contreras does not have any medical conditions in the first category of high risk conditions listed by the CDC. There is no showing that suffering from hyperlipidemia or a lung granuloma increases his risk of complications. At only 50 years old Contreras is not of an age that makes him more vulnerable to the disease. The only medical condition that "might" put Contreras at risk for severe symptoms if he contracts COVID-19 is his hypertension.[5] One court has explained that the relationship between hypertension and elevated risk from COVID-19 is not fully understood.

> Some experts say that high blood pressure alone is not a risk factor, but that it may be a risk factor when combined with another underlying health condition. *See* Rob Stein, *High Blood Pressure Not Seen As Major Independent Risk For COVID-19*, National Public Radio (Mar. 20, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/20/818986656/high-blood-pressure-not-seen-as-major-independent-risk-for-covid-19. Other experts believe that COVID-19 strains the heart, making people with hypertension more vulnerable to the disease. *See* Anna Medaris Miller et al., *10 common health*

---

[5] The medical records submitted show that his hypertension is "well controlled" since June 27, 2017. (Doc. 267 at 19, 406, 434, 479, 491, 552, 598, 625.)

>   *conditions that may increase risk of death from the coronavirus, including diabetes and heart disease*, Business Insider (Mar. 23, 2020), https://www.businessinsider.com/hypertension-diabetes-conditions-that-make-coronavirus-more-deadly-2020-3 (noting that 76% of people in Italy who died from COVID-19 had hypertension).

*United States v. Rodriguez*, 451 F. Supp. 3d 392, 402 n.15 (E.D. Pa. 2020). Because the defendant in *Rodriguez* had hypertension and diabetes, the court concluded that hypertension probably was a risk factor for him. *Id.* Here, the Court concludes that Contreras' hypertension alone does not constitute an extraordinary and compelling reason to warrant his release. *See*, *e.g.*, *United States v. Colbert*, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (denying compassionate release where defendant had hypertension, high cholesterol, and prostate cancer in the past). A showing has not been made that his hyperlipidemia, chest pain, or lung granuloma increase his risk of severe illness if he contracts COVID-19.

Because Contreras has not shown that he suffers from a serious medical condition that increases his risk of severe illness from COVID-19, the Court finds that he has not demonstrated "extraordinary and compelling" reasons to warrant a sentence reduction under § 3582(c)(1)(A).

Congress has stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Sentencing Commission recognizes that rehabilitation cannot be the sole factor for compassionate release. *See* U.S.S.G. § 1B1.13 cmt. n.3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Because Contreras has not stated any other reason for compassionate release that is extraordinary and compelling, his rehabilitation is not a reason to grant his motion for compassionate release, and the Court does not need to consider the 18 U.S.C. § 3553(a) factors.

## CONCLUSION

The Court finds that extraordinary and compelling circumstances do not exist. Accordingly,

**IT IS ORDERED** that defendant Jose Contreras' Motion for Compassionate Release is denied. (Doc. 264.)

Dated this 30th day of November, 2020.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____

12